UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lailaa Iqbal, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Antony J. Blinken, et al.,<br><br>    Defendants. | No. 2:23-cv-01299-KJM-KJN<br><br>ORDER |

In this action under the Administrative Procedure Act, plaintiffs allege defendants have unreasonably delayed the adjudication of their visa applications. Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim. The court **grants the motion in part.**

**I.    BACKGROUND**

Plaintiffs are three United States citizens and their respective Pakistani-national spouses (beneficiary plaintiffs). Compl. ¶ 15, ECF No. 1. Defendants are Antony J. Blinken, sued in his official capacity as the United States Secretary of State, Rena Bitter, sued in her official capacity as Assistant Secretary of State for Consular Affairs, Michael Solberg, sued in his official capacity as the United States Embassy in Islamabad Consul General and Andrew Schofer, sued in his official capacity as United States Embassy in Islamabad Deputy Chief of Mission. *Id.* ¶¶ 19–22.

Foreign nationals may petition for immigrant visas based on a familial relationship with a U.S. citizen. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1201(a)(1)(A); 22 C.F.R. §§ 42.21, 42.42. In accordance with the Immigration and Nationality Act (INA), consular officers have authority to issue immigrant visas. Compl. ¶ 30 (citing 8 U.S.C. § 1201; 22 C.F.R. § 42.71). Before a consular officer can issue a visa, an applicant must make a proper application, 8 U.S.C. § 1201(a)(1), "in such form and manner" prescribed by the regulations, *id.* § 1202(a).

For a family-based immigrant visa, the sponsoring U.S. citizen must first file a "Petition for Alien Relative (Form I-130)" with the United States Citizenship and Immigration Services (USCIS). Compl. ¶ 34 (citing 8 U.S.C. § 1154). Once the USCIS approves the I-130 form, it transfers the petition to the National Visa Center (NVC) for preprocessing. *Id.* ¶ 35. The beneficiary may then begin the visa application process by submitting a DS-260 Online Immigrant Visa and Alien Registration Application. *Id.* ¶ 36 (citing 9 Foreign Affairs Manual (FAM) § 504.1-2(a)(1)). After the beneficiary completes the DS-260 and submits all the necessary forms and fees to the NVC, the NVC determines whether an applicant is documentarily complete. *Id.* ¶ 37 (citing 9 FAM § 504.1-2(b)(2)).

Once the NVC determines an applicant is documentarily complete and the applicable consular officer completes all the "necessary clearance procedures," the applicant is considered documentarily qualified. 22 C.F.R. § 40.1(h). This means the applicant is qualified "to apply formally for an immigrant visa[.]" *Id.* For an immigrant visa applicant, to "[m]ake or file an application for a visa means" in relevant part, "personally appearing before a consular officer and verifying by oath or affirmation the statements contained on . . . Form DS–260[.]" *Id.* § 40.1(l). The NVC schedules interviews at the applicable overseas consular post "in the chronological order of the documentarily complete applicants." 9 FAM 504.1-2(d)(1). During the interview, an applicant can formally apply for an immigrant visa by swearing to or affirming the contents of the DS-260 and signing it before a consular officer. Compl. ¶ 45 (citing 22 C.F.R. § 42.67(a)). The INA provides "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Once an application is properly completed and executed before a consular officer, the officer must either issue or refuse to issue a visa. *See* 22 C.F.R. § 42.81(a).

Here, the sponsoring plaintiffs have all filed I-130 forms for the beneficiary plaintiffs. Compl. ¶¶ 16–18. The USCIS approved their petitions and sent them to the NVC. *Id.* The beneficiary plaintiffs submitted DS-260 Immigrant Visa Electronic Applications and all the required documents and applicable fees for immediate relative immigrant visas. *Id.* The NVC has found all three beneficiary plaintiffs are "documentarily qualified": plaintiffs Qaiser Javed, Sabah Jabeen and Irsa Jamil were documentarily qualified respectively on March 23, 2022, June 10, 2022 and May 24, 2022. *Id.* ¶¶ 15–18. Although an interview is the only way plaintiffs can make formal visa applications, the NVC has not scheduled their interviews, Compl. ¶¶ 15–18.

The INA grants the Secretary of State discretion to carry out the INA abroad in accordance with the INA and other provisions of law. Compl. ¶ 78; *see* 22 U.S.C. § 2651a(a)(1). The Secretary is also "charged with the administration and the enforcement of the provisions of [the INA] and all other immigration and nationality laws relating to [] the powers, duties, and functions of diplomatic and consular officers of the United States[.]" 8 U.S.C. § 1104(a). "The Secretary is authorized to promulgate such rules and regulations as may be necessary to carry out the functions of the Secretary of State and the Department of State" and "may delegate authority to perform any of the functions of the Secretary or the Department to officers and employees under the direction and supervision of the Secretary" and may also "delegate the authority to redelegate any such functions." 22 U.S.C. § 2651a(a)(4).

On November 16, 2021, defendant Secretary of State Antony Blinken sent Cable 21 STATE 115378 to all diplomatic and consular posts with the subject line "Recalibration of Consular Services Prioritization at Posts Abroad." Compl. ¶ 85; *see* Cable 115378, ECF No. 8-3. The cable rescinded a prior mandatory prioritization guidance and noted "[c]onsular chiefs should determine the priority order of consular services processed at post with the caveats listed in para 6[.]" Cable 115378 ¶ 1. Paragraph 6 asks diplomatic and consular posts to "[p]lease bear the following in mind" as they prioritize their work: "Consistent with Congressional direction, post[s] should strive to process immediate relative cases . . . within 30 days . . . . Seasonal priorities such as H-2 applicants, students, U.S. government-funded exchange visitors, and Summer Work and Travel applicants must also be a factor." *Id.* ¶ 6; *see* Consolidated Appropriations Act of 2000,

Pub. L. No. 106-113, app. G, div. A, tit. II § 237(a) (Processing Visa Applications), 113 Stat. 1501, 1501A-430 (1999) ("It shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens . . . within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service."). The cable also notes "post[s] should begin to rebalance workload across consular services to meet the demand of the rebounding travel sector" by "reintroducing routine NIV [nonimmigrant visas] for work and tourism into the workload" for those who have not yet done so. Cable 115378 ¶ 2. Additionally, it emphasizes "[v]isas and travel to the United States for work and tourism are crucial to continued U.S. economic recovery" and "[v]isas, especially NIVs, are also a critical element in many bilateral relationships[.]" *Id.* ¶ 11.

Plaintiffs allege the cable unlawfully expanded the authority of consular chiefs, Compl. ¶¶ 85–90, and is the first of a series of cables implementing an "NIV Prioritization Scheme," in which Blinken has directed posts to prioritize non-immigrant visas, *id.* ¶¶ 91–99. The prioritization of non-immigrant visas has resulted in delays in processing immigrant visas. *Id.* ¶¶ 100–04. Plaintiffs also allege Blinken and/or other defendants have made decisions to understaff the United States Embassy in Islamabad, Pakistan by freezing three vacant positions and requiring only officers with certain qualifications to be assigned to that embassy. *Id.* ¶¶ 105–07. Despite the surge in demand at the Embassy in Islamabad due to the suspension of operations at the Embassy in Kabul, Afghanistan, Blinken and/or the other defendants "reassigned only one consular officer" from Kabul to Islamabad. *Id.* ¶ 108. Although the State Department sent consular temporary duty personnel to Islamabad, they have only assisted Afghans and those with ties to Afghanistan and have not assisted those with ties to Pakistan. *Id.* ¶ 111. Due to the shortage of staff, the wait times for interviews are lengthy and immigrant visa processing continues to be delayed. *Id.* ¶¶ 112–13.

Plaintiffs allege these three decisions—1) expansion of the consular chiefs' authority, 2) prioritization of non-immigrant visas, and 3) understaffing—have worsened the delay in processing immediate relative immigrant visas for Pakistani nationals. *Id.* ¶¶ 114–15. Although there has been a decrease in the level of backlog for other visa categories, the backlog for

immediate relative immigrant visa categories in Islamabad has increased. *Id.* ¶¶ 115–19. These delays have harmed plaintiffs by increasing the duration of indefinite family separation. *Id.* ¶ 120. The continued separation has placed undue strain on family relationships, caused plaintiffs "to miss the most cherished periods of life with their spouses and children," and has significantly harmed plaintiffs' mental health. *Id.*

On June 30, 2023, twelve to fifteen months after the last government action—when the NVC found the beneficiary plaintiffs to be documentarily qualified—plaintiffs filed this action. *See id.* ¶¶ 16–18. Plaintiffs challenge the lawfulness of defendants' three decisions and seek declaratory and injunctive relief. Plaintiffs claim defendants' expansion of the consular chiefs' authority (claim one), non-immigration visa prioritization scheme (claim two), and understaffing scheme (claim three) are arbitrary and capricious, in violation of 5 U.S.C. § 706(2). *See id.* ¶¶ 123–52. They also claim defendants have unreasonably delayed the adjudication of plaintiffs' immigrant visas in violation of 5 U.S.C. § 555(b) (claim four) and seek relief under the Mandamus Act, 28 U.S.C. § 1361 (claim five). *See id.* ¶¶ 153–72. Defendants now move to dismiss all of plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Mot., ECF No. 6. Plaintiffs oppose, Opp'n, ECF No. 8, and defendants have replied, Reply, ECF No. 9. On October 13, 2023, the court held a hearing on this motion. Mins. Hr'g, ECF No. 14. Curtis Morrison appeared on behalf of plaintiffs and Elliot Wong appeared on behalf of defendants. *Id.*

## II. SUBJECT MATTER JURISDICTION

### A. Article III Standing

Defendants first move to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Mot. at 11.[1] They argue plaintiffs do not have standing to challenge the three decisions at issue. *Id.* Standing is a necessary component of the court's exercise of subject matter jurisdiction; if a plaintiff lacks standing, the court lacks jurisdiction. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "[A]

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

5

1  plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v.
2  Cuno*, 547 U.S. 332, 352 (2006).  To demonstrate standing, a plaintiff must (1) have suffered a
3  concrete and particularized injury-in-fact, which is actual or imminent, not conjectural or
4  hypothetical; (2) there must be a causal connection between the injury and the defendant's
5  conduct; and (3) it must be likely that the injury will be redressed by a favorable decision.
6  *Pritikin v. Dep't of Energy*, 254 F.3d 791, 796–97 (9th Cir. 2001).  At a motion to dismiss stage,
7  courts "presum[e] that general allegations embrace those specific facts that are necessary to
8  support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted).

9      Defendants argue plaintiffs cannot demonstrate the three decisions are the cause of their
10 injuries.  To allege a causal connection, plaintiffs must show their injury is fairly traceable to
11 defendants' challenged conduct and not "the result of the independent action of some third party
12 not before the court."  *Id.* (citation and marks omitted).  Plaintiffs do not need to demonstrate
13 proximate cause to satisfy the "less rigorous Article III causation threshold[.]" *Canyon County v.
14 Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2008).

15     Plaintiffs have not shown the expansion of the consulate chiefs' authority is fairly
16 traceable to their injuries.  Cable 115378 rescinded a COVID-era mandatory prioritization
17 guidance and gave consular chiefs discretion to determine the priority order of consular services.
18 Cable 115378 ¶ 1.  Plaintiffs allege prior to Cable 115378, "no record exists in the Immigration
19 and Nationality Act or history of the State Department of consular chiefs having the broad
20 authority and discretion to choose which visa categories to prioritize, and which ones to neglect."
21 Compl. ¶ 3.  Regardless of whether the cable in fact expanded consular chiefs' authorities,[2]
22 plaintiffs have not sufficiently alleged how this change led to plaintiffs' injuries.  For example,

---

[2] Several courts have found Cable 115378 did not expand consular chiefs' authority—it merely restored their authority by rescinding the COVID-era mandatory prioritization scheme. *See, e.g.*, *Sunny v. Biden*, No. 21-4662, 2023 WL 5613433, at *2 (E.D.N.Y. Aug. 30, 2023). However, the parties have not provided enough information in their respective briefings for this court to make a determination on this matter at this time.  The court assumes plaintiffs' allegations are true at this stage and finds if consular chiefs did not have broad authority and discretion to choose which visa categories to prioritize prior to the cable, the cable would have expanded consular chiefs' authorities.

the consular chief in the Embassy of Islamabad could have exercised discretion to prioritize Immediate Family immigrant visas and the delay may be due to significant backlog that predates the cable. *See* Compl. ¶¶ 85–90, 123–32. In opposition, plaintiffs argue the decision to allocate visa services to Afghans created backlogs, *see* Opp'n at 14, however, they do not allege or argue that decision was made by the consular chief in Islamabad in exercise of his or her discretion and not in compliance with a mandatory directive from the Secretary of State or other law. Plaintiffs have not shown any expansion of consular chiefs' authorities is fairly traceable to their injuries.

Plaintiffs also do not show there is a "NIV prioritization scheme." Cable 115378 does not mandate prioritization of non-immigrant visas. While it does encourage posts to "reintroduce routine nonimmigrant visa (NIV) appointment types into its workload," Cable 115378 ¶ 1, and emphasizes the importance of NIVs, *id.* ¶ 11, the cable does not require diplomatic and consular posts to prioritize non-immigrant visas over immigrant visas. In fact, the cable notes while consular chiefs "should determine the priority order of consular services," *id.* ¶ 1, the cable qualifies the recommendation with paragraph 6, which specifically states "post[s] should strive to process immediate relative cases . . . within 30 days," *id.* ¶ 6. The cable emphasizes immediate relative immigrant visas should be prioritized. Nowhere does the cable mandate diplomatic and consular posts prioritize nonimmigrant visas over immigrant visas. Because plaintiffs have not shown there is a non-immigrant visa prioritization scheme, it cannot show the scheme is fairly traceable to their injuries. *See Tesfaye v. Blinken*, No. 22-411, 2022 WL 4624210, at *7 (D.D.C. Sept. 29, 2022) ("To demonstrate standing to challenge a policy, it is (unsurprisingly) necessary to demonstrate the existence of the challenged policy." (citation and marks omitted)).

Plaintiffs do not have standing to challenge the purported expansion of consular chiefs' authority and non-immigrant visa prioritization scheme. *See Sunny*, 2023 WL 5613433, at *2 (finding no standing).[3] Plaintiffs' first and second claims are **dismissed for lack of subject matter jurisdiction.** However, plaintiffs have sufficiently pled Cable 115378 and the alleged

---

[3] Several courts who have reviewed similar challenges have found the plaintiffs lack standing to challenge Cable 115378. *See, e.g.*, *Avagyan v. Blinken*, No. 22-2440, 2022 WL 19762411, at *4 (D.D.C. Sept. 29, 2022) (collecting cases).

7

understaffing scheme are fairly traceable to the delays in processing their visas. Although plaintiffs do not show the existence of a NIV prioritization scheme, it is likely the reintroduction of NIV processing and shortage of staff in the Embassy in Islamabad would increase workload for the staff at the Embassy and delay the processing of immigrant visas in general. Thus, plaintiffs have shown Cable 11538 and understaffing at the Embassy in Islamabad are fairly traceable to their injuries. This is sufficient to show Article III standing as to claims three, four and five. The court now considers whether these claims are justiciable under the APA.

**B.     Justiciability under the APA**

There is a "strong presumption that Congress intends judicial review of administrative action." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). This presumption can be overcome "only in two narrow circumstances (1) when Congress expressly bars review by statute, or (2) where an agency action is committed to agency discretion by law." *Id.* (internal marks and citations omitted). Defendants argue the second exception applies. Mot. at 14–15.

An agency action is committed to agency discretion by law "in those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (internal marks and citation omitted). The Supreme Court, for example, has precluded judicial review of "certain categories of administrative decisions" including decisions not to institute enforcement proceedings, refusals to grant reconsideration of an action, decisions of the Director of Central Intelligence to terminate an employee, and the allocations of lump-sum appropriation. *Id.* at 191–92. These categories of decisions involve "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise: whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; [and] 'indeed, whether the agency has enough resources' to fund a program 'at all.'" *Id.* at 193 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)).

1. **Claim Three: Understaffing Scheme**

Here, defendants' third claim alleging the understaffing scheme is nonjusticiable because it involves matters firmly committed to the State Department. The Secretary of State has broad discretion to carry out the INA abroad and is empowered to administer and enforce the provisions of the INA and other immigration and nationality laws "relating to [] the powers, duties, and functions of diplomatic and consular officers of the United States[.]" 8 U.S.C. § 1104(a). The Secretary has authority to promulgate necessary rules and regulations to carry out the functions of the Secretary and the Department of State and "may delegate authority to perform any of the functions of the Secretary or the Department" and may also "delegate the authority to redelegate any such functions." 22 U.S.C. § 2651a(a)(4). The INA does not mandate each post have a certain number of staff. Decisions on how many staff members to hire and imposing qualifications and clearance levels for staff positions are all matters within the agency's discretion that touch on the agency's expertise. *See Massachusetts v. E.P.A.*, 549 U.S. 497, 527 (2007) ("[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities."). These matters also involve balancing numerous factors including whether there are sufficient resources, allocation of resources between and within embassies, staffing needs and other considerations. The agency decision plaintiffs challenge—regarding staffing levels—is nonjusticiable because it is a matter firmly committed to the Secretary's discretion. *See Naveed v. Blinken*, No. 22-3579, 2023 WL 4142952, at *1 (D.D.C. Jan. 18, 2023) (discretion to implement defendants' understaffing scheme is "committed to the discretion of the United States Department of State"). Plaintiffs' third claim is **dismissed**.

2. **Claims Four and Five: Unreasonable Delay**

The court does have jurisdiction to determine whether defendants have unreasonably delayed the adjudication of plaintiffs' visa applications, as plaintiffs allege in claims four and five. There is a difference between an agency's discretion in deciding how to allocate consular resources and an agency's discretion in deciding whether to resolve an application. *Cf. Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007). Although the INA does not set a deadline for

9

consular officers to review and adjudicate visa applications, defendants have a duty to act within a reasonable time. *See* 5 U.S.C. § 555. "Accordingly, the APA and related case law provide 'law to apply' in determining whether defendants have failed to act within a reasonable time." *Khan v. Johnson*, 65 F. Supp. 3d 918, 926 (C.D. Cal. 2014). In fact, "federal courts routinely assess the 'reasonableness' of the pace of agency action under the APA." *Id.* (citation omitted).

### III. FAILURE TO STATE A CLAIM

#### A. Legal Standard

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In response, the court begins by assuming the complaint's factual allegations are true, but not its legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citation omitted). The court construes all factual allegations "in the light most favorable to the nonmoving party." *Steinle v. City of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (citation omitted). The court then determines whether those factual allegations "plausibly give rise to an entitlement to relief" under Rule 8. *Ashcroft*, 556 U.S. at 679.

Under the APA, the reviewing court must "compel agency action . . . unreasonably delayed[.]" 5 U.S.C. § 706(1). However, "[a] court can compel agency action under this section only if there is a specific, unequivocal command placed on the agency to take a discrete agency action, and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (internal marks and citation omitted). "The agency action must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'" *Id.* at 1075–76 (citation omitted). Similarly, the Mandamus Act "provides district courts with mandamus power 'to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting 28 U.S.C. § 1361). "Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the [Mandamus Act] 'in essence,' as one for relief under § 706 of the APA." *Id.* (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)). "Because the relief sought is essentially the

same, in the form of mandamus," the court analyzes plaintiffs' entitlement to relief under the APA. *Id.*

**B.    Analysis**

Plaintiffs argue defendants have a "mandatory, nondiscretionary duty to allocate and adjudicate visas and applications" under § 1202(b) of the INA. Opp'n at 21 (citing 8 U.S.C. § 1202(b)). Section 1202(b) provides "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Courts are split on whether there is a mandatory duty to review and adjudicate immigrant visa applications under § 1202(b). *Compare Kassem v. Blinken*, No. 21-01400, 2021 WL 4356052, at *5 (E.D. Cal. Sept. 24, 2021) (holding there is a clear duty under § 1202(b) and collecting cases) *with Mueller v. Blinken*, No. 23-24, 2023 WL 4759245, at *3 (E.D. Va. July 17, 2023) (holding there is no clear duty under § 1202(b) and collecting cases). The court joins with the district courts that have held there is a clear duty. As one court notes, the use of the word "shall" indicates a mandatory nondiscretionary duty to review and adjudicate immigrant visa applications. *See Gomez v. Biden*, No. 20-01419, 2021 WL 3663535, at *20 (D.D.C. Aug. 17, 2021). Therefore, § 1202(b) does impose a mandatory duty on defendants to review and adjudicate the beneficiary plaintiffs' visa applications.

Some courts have found the defendants' duty under § 1202(b) is not triggered until the plaintiff has made a formal visa application. *See, e.g.*, *Khalili-Araghi v. Bitter*, No. 23-00696, 2023 WL 5988590, at *4 (N.D. Cal. Sept. 13, 2023). As noted above, to make or file an application for an immigrant visa, an applicant must "personally appear[] before a consular officer." 22 C.F.R. § 40.1(l); *see* 8 U.S.C. § 1202(a). Based on a strict reading of the INA, the defendants' duty under § 1202(b) would not be triggered until an applicant formally applies for a visa. *Khalili-Araghi*, 2023 WL 5988590, at *4. However, this leaves the beneficiary plaintiffs in a catch-22: while they have submitted completed DS-260 Immigrant Visa Electronic Applications and are "documentarily qualified," that term merely means they are qualified to "apply formally for an immigrant visa," 22 C.F.R. § 40.1(h); but to formally apply for an immigrant visa, they must appear for an interview, which they cannot do until defendants schedule the interview. The distinction between a "formal application" and a "DS-260 Immigrant Visa Electronic

11

Application" is arbitrarily drawn; plaintiffs cannot take any actions to prod the INA to schedule an interview, but they also cannot bring suit to compel the agency to schedule the interview so it can adjudicate their application, as statutorily required. The court is disinclined to adopt "statutory interpretations which would produce absurd results." *Compton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1184 (9th Cir. 2010). Fundamentally, the court finds it may compel the agency to take action under the APA itself, which plaintiffs invoke in their complaint. *See* Compl. ¶¶ 153–68 (alleging defendants unreasonably delayed adjudication of their visas in violation of 5 U.S.C. § 555(b)).

The APA imposes a clear nondiscretionary duty on agencies "to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b). Thus, defendants have a nondiscretionary duty to adjudicate plaintiffs' immigrant visa petitions within a reasonable time. *Cf. Mugomoke v. Curda*, No. 10-02166, 2012 WL 113800, at *5 (E.D. Cal. Jan. 13, 2012) (default rule of § 555(b) applied when statute did not confer authority on Secretary to not act on an I–485 application). "To hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law." *Liu v. Michael Chertoff*, No. 07-00734, 2007 WL 2119427, at *1 (N.D. Cal. July 23, 2007).

The court now turns to whether plaintiffs have sufficiently pled the alleged delay was unreasonable. In determining whether an agency action was unreasonably delayed, the courts consider the six "*TRAC* factors." *In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138 (9th Cir. 2020). The factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the

/////

|   |   |
|---|---|
| 1 | court need not find any impropriety lurking behind agency lassitude |
| 2 | in order to hold that agency action is unreasonably delayed. |

*Id.* at 1138–39 (quoting *Telecommc'ns Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79–80 (D.C. Cir. 1984)).

"What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, No. 06-06724, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) (citation omitted). Because of the fact-intensive nature of the reasonableness determination, courts disagree on "whether the *TRAC* factors should be analyzed to resolve a motion to dismiss." *Ortiz v. U.S. Dep't of State*, No. 22-00508, 2023 WL 4407569, at *7 (D. Idaho July 7, 2023) (collecting cases). Some courts decline to consider the factors as premature, *see, e.g.*, *Hui Dong v. Cuccinelli*, No. 20-10030, 2021 WL 1214512, at *4 (C.D. Cal. Mar. 2, 2021), while others have considered the factors to determine whether a plaintiff has sufficiently alleged unreasonable delay, *see, e.g.*, *Shahijani v. Laitinen*, No. 23-03967, 2023 WL 6889774, at *3 (C.D. Cal. Oct. 6, 2023).

This court finds the reasonableness inquiry is best resolved ultimately on a full factual record. *See, e.g.*, *Tailawal v. Alejandro Mayorkas, Sec'y of Homeland Sec.*, No. 22-01515, 2022 WL 4493725, at *4 (C.D. Cal. Aug. 18, 2022) (declining to consider the TRAC factors on a motion to dismiss); *see also Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) ("A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." (quoting *Gonzalez v. Cuccinelli*, No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021)). Here, plaintiffs have sufficiently pled defendants have unreasonably delayed adjudicating their visa applications. *See* Compl. ¶¶ 16–18, 75–77, 114–19, 159–67. Accordingly, defendants' motion to dismiss claims four and five for failure to state a claim are **denied.**

### IV. CONCLUSION

Defendants' motion to dismiss is **granted in part.** Plaintiffs' first, second and third claims are **dismissed without leave to amend.** Any further amendments would be futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Defendants' motion to dismiss plaintiffs'

13

1  fourth and fifth claims is **denied**.  A Status (Pretrial Scheduling) Conference is hereby set for
2  **January 25, 2024 at 2:30 p.m.** in Courtroom 3 (KJM) before the undersigned, with the **filing of**
3  **a joint status report due fourteen (14) days prior.**  The January hearing will proceed by video
4  conferencing through the Zoom application.  The Courtroom Deputy will provide counsel with
5  the hearing access information no less than 24 hours before the hearing.
6      This order resolves ECF No. 6.
7      IT IS SO ORDERED.
8  DATED:  November 8, 2023.

CHIEF UNITED STATES DISTRICT JUDGE